UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EARL DEVILLE & DONNA DEVILLE** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-7391** |
| **CONMACO/RECTOR, L.P., ET AL.** | **SECTION I/2** |

### ORDER AND REASONS

Before the Court is a motion[1] for summary judgment filed by third-party defendant, Fireman's Fund Insurance Company ("FFIC"). Defendants and third-party plaintiffs, Conmaco/Rector, L.P. ("Conmaco") and Lexington Insurance Company ("Lexington"), and plaintiffs, Earl Deville and Donna Deville, filed oppositions. For the following reasons, the motion is **DENIED**.

*BACKGROUND*

In early 2009, Great Southern entered into a contract with the State of Louisiana to repair, construct and/or install certain docks, bulkheads and other structures at the State's Turtle Cove Research Facility located near Manchac, Louisiana.[2] In connection with the project, Great Southern chartered a number of vessels, including eleven barges.[3] Great Southern also leased a "crawler crane" and certain hammers and pile driving equipment from Conmaco.[4] The crane was eventually driven onto the barges chartered by Great Southern and used for pile-driving

---

[1] R. Doc. No. 51.
[2] *Id.*
[3] R. Doc. No. 68.
[4] *Id.*

1

activity.[5] The plaintiffs have asserted negligence claims against Conmaco and Great Southern as a result of an incident in which a hammer attached to the crane purportedly "ran," injuring Earl Deville's left arm.[6]

When Great Southern leased from Conmaco the crawler crane, the crane boom and various equipment associated with the crane, Great Southern and Conmaco signed an Equipment Lease No. 2684 ("Lease"). The Lease contained a provision stating that the Lease would be governed by Louisiana law and another provision that, "[l]essee is liable for any loss or casualty which is not insured, or which is within exclusions to insurance coverage."[7] The Lease also contained certain "General Lease Terms and Conditions," including Item No. 3.c which states:

> c. LESSEE SHALL AT ITS SOLE COST AND EXPENSE PROVIDE AND MAINTAIN A POLICY OF COMMERCIAL GENERAL LIABILITY INSURANCE COVERING ALL RISKS OF PHYSICAL LOSS OR DAMAGE TO PROPERTY OR INJURY TO PERSONS WITH RESPECT TO THE LESSEE'S POSSESSION AND USE OF THE EQUIPMENT, in such amounts as may from time to time be satisfactory to Lessor, including, but not limited to, coverage for contractual liability with regard to all of the obligations and indemnities of Lessee hereunder….Lessee shall provide Lessor with Certificates of Insurance evidencing the coverages required above, and naming the Lessor and The CIT Group…as an additional named insured party under such policies….[8]

Great Southern obtained Policy No. 0ML92001617 from FFIC providing Marine General Liability coverage to Great Southern as the named insured ("the Policy"). The Policy did not specifically identify Conmaco as an additional insured. Instead, the Policy contains a blanket additional insured endorsement, which provides:

---

[5] *Id.*
[6] *Id.*
[7] R. Doc. No. 51-5, p.2.
[8] *Id.* at pp.4-5.

2

> 1. Section IV. of the Policy (Who is an Insured) is amended to include any person or organization that you are obligated by an 'insured contract' to include as Additional Insureds, but only with respect to liability arising out of "your work".[9]

Under the terms of the endorsement, the prerequisite to additional insured coverage is an "insured contract" between Great Southern and Conmaco. In relevant part, the Policy defines "insured contract" as:

> f. That part of any other contract or agreement pertaining to your business (including an indemnification of municipality in connection with work performed for a municipality) under which you assume the tort liability for another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means any liability that would be imposed by law in the absence of any contract or agreement.[10]

In addition, the Policy contains an exclusion stating coverage does not apply to:

> 12. "Owned Watercraft"
> Any liability, expense or costs, contractually assumed or otherwise, for any sum(s) that you are or are alleged to be liable with respects to the ownership, use or entrustment to others of any "owned watercraft." Use includes operation and "loading and unloading."
>
> This exclusion applies even if the claims against any [space] allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any "owned watercraft."[11]

The Policy further defines "owned watercraft" as:

> 22. "Owned Watercraft" includes every description of "watercraft" or other artificial contrivance, including all appurtenances thereto, that you:
> a. Own, charter, lease or borrow; or

---

[9] R. Doc. No. 51-3, p.37.
[10] *Id.* at pp.26-27.
[11] *Id.* at p.10.

3

      b. Hire or charter broker for or on behalf of others.[12]

FFIC has filed a motion for summary judgment claiming that Conmaco is not entitled to any insurance coverage under the Policy. FFIC asserts that Conmaco is not an additional insured under the Policy. FFIC further asserts that even if Conmaco had been an additional insured, any coverage would be excluded under the "Owned Watercraft" exception.

## *LAW AND ANALYSIS*

**I.     STANDARD OF LAW**

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also id.* ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.") (citing La. Civ. Code art. 2045).[13] "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668 (5th Cir. 1999). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod.*, 180 F.3d at 668-69 (quoting *Tx. Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted). "In the context of contract interpretation, only when there is a choice of reasonable

---

[12] *Id.* at p.28.
[13] The parties do not dispute that Louisiana law applies to the insurance policy at issue in this case.

interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

Pursuant to Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader*, 848 So.2d 577, 580 (La. 2003). A court should not, however, interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.*

If there is any doubt or ambiguity as to a provision in an insurance contract, Louisiana law applies a rule of "strict construction" that requires that any doubt or ambiguity in an insurance contract be construed in favor of coverage to the insured and against the insurer who issued the policy. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994); *see also* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."); accord *Valentine v. Bonneville Ins. Co.*, 691 So.2d 665, 668 (La.1997); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 741 (La.1994). If an ambiguity exists, a court should "construe the policy 'to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry.' " *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 764 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. America*, 916 F.2d 267, 269 (5th Cir. 1990)); *see Breland v. Schilling*, 550 So.2d 609, 610-11 (La. 1989) ("Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.").

5

While the insured bears the burden of proving the existence of the policy and coverage, i.e., the "requirements" for coverage, *Tunstall v. Stierwald*, 809 So.2d 916, 921 (La. 2002) (citing *Collins v. New Orleans Pub. Serv., Inc.*, 234 So.2d 270 (La. App. 4th Cir. 1970)), the insurer bears the burden of proving the existence of policy limits or exclusions. *Tunstall*, 809 So.2d at 921 (citing *Mass. Protective Ass'n v. Ferguson*, 168 La. 271, 121 So. 863 (La. 1929)).

## II.   ADDITIONAL INSURED REQUIREMENT

FFIC's first claim is that in order for Conmaco to be an additional insured under the Policy, there must have be an "insured contract" between Great Southern and Conmaco. FFIC argues that because Great Southern does not "assume the tort liability" of Conmaco under the Lease, the Lease does not qualify as an "insured contract." FFIC further argues that the definition of "insured contract" is restricted to contracts containing provisions "in the form of a hold harmless or other indemnity agreement."[14] These arguments are contrary to the unambiguous language of the Policy and the Lease.

The Policy states that an "insured contract" includes any contract "under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." The language in Item No. 3.c of the Lease mimics this exact constraint in requiring the lessee to maintain a policy "COVERING ALL RISKS OF PHYSICAL LOSS OR DAMAGE TO PROPERTY OR INJURY TO PERSONS." There is only one reasonable interpretation of this language: Great Southern is responsible for shielding Conmaco from any tort liability relating to bodily injury or property damage to a third party with respect to Great Southern's possession and use of the leased equipment.

---

[14] R. Doc. No. 72-1, p.2.

When the clarity of this language in Item No. 3.c is coupled with the additional provision in the Lease whereby Conmaco shifts all liability for any loss or casualty not covered by insurance to Great Southern, it is evident that the parties intended for Great Southern to assume the tort liability of Conmaco.  The absence of specific "hold harmless" or "indemnity agreement" language preferred by FFIC does not negate the clear intent of the parties.[15]  The Lease is an "insured contract" as defined in the Policy and, therefore, Conmaco is an "Additional Insured."

## III. WATERCRAFT EXCLUSION

FFIC's second claim is that even if Conmaco is an "Additional Insured," there is no coverage available for this incident because of the watercraft exclusion in the Policy.  It is not disputed that since Great Southern chartered the barge, the barge falls under the Policy definition of "owned watercraft."  FFIC argues that the watercraft exclusion applies because the crane that caused the injury was placed and operating on the barge at the time of the incident.[16]  Plaintiffs and Conmaco counter that the watercraft exclusion applies only to Great Southern, not to Conmaco.

In its opening section, the Policy distinguishes "Named Insured" from the other "Insured" parties:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy.

---

[15] FFIC cites two cases to support its contention that liability coverage such as that offered by the FFIC Policy is intended only to apply to hold harmless and indemnity provisions.  The cases do not assist the Court in this particular case.  Both courts held that when contractual liability coverage is limited to claims based on personal injury or property damage, coverage cannot be extended to cover a claim for breach of contract.  *See Love v. AAA Temporaries, Inc.*, 961 So. 2d 480, 485 (La. App. 1 Cir. 2007); *Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 221 (5th Cir. 2005).

[16] The Court need not address this issue in view of its conclusion below that the watercraft exclusion is inapplicable to Conmaco.

7

> The word "Insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION IV).[17]

Plaintiffs and Conmaco point out that the language in the exclusion and subsequent definition for owned watercraft uses the word "you" (in contrast to "insured") to describe to whom the exclusion applies.  Such distinction is relied upon throughout the section listing the various exclusions.[18]  Plaintiffs and Conmaco argue that since Great Southern is the only party listed as a Named Insured,[19] the use of the word "you" limits the watercraft exclusion to Great Southern.  This interpretation leads to an odd result in which an additional insured party benefits from coverage that otherwise would be denied to the primary party under the Policy, but it is still a reasonable interpretation of the language. *See Breaux v. Halliburton Energy Services, Inc.*, 2009 WL 4642013, *5-6, (E.D. La. December 2, 2009) (Court ruled that the insurance policy covered additional insured even though exclusion would have applied to named insured).

It would also be reasonable to overlook the precise language used in the contract and assume that FFIC intended to provide no more coverage to any "Additional Insured" than to the "Named Insured."  However, when FFIC relies on a policy exclusion to deny coverage, it has the burden of showing that such exclusion clearly and unambiguously applies. *Premiere, Inc. v. Commercial Underwriters Ins. Co.*, No. Civ.A. 02-3199, 2003 WL 21634953, *6 (E.D. La. July 9, 2003).  FFIC has failed to meet this burden.  Plaintiffs and Conmaco have offered a reasonable interpretation of the Policy's watercraft exclusion.  When a policy's language permits differing reasonable interpretations, the language is ambiguous and the policy must be interpreted in favor

---

[17] R. Doc. No. 51-3, p.3.  As described earlier, the parties signed an endorsement to the Policy amending the definition of "Who is an Insured," which has the effect of including Conmaco.  *Id.* at p.37.
[18] For example, the very next exclusion in the Policy, which is for "Auto, Aircraft," uses the phrases "any insured" and "you or the insured" to describe to whom the exclusion applies. R. Doc. No. 51-3, p.10.
[19] *See* R. Doc. No. 51-3, p.34.

of coverage. *Id.* Therefore, even though FFIC's interpretation of the watercraft exclusion is reasonable, the Policy must be interpreted such that the exclusion does not apply to Conmaco.

### IV.     CONCLUSION

Accordingly,

**IT IS ORDERED** that defendant's motion[20] for summary judgment is **DENIED**.

New Orleans, Louisiana, September 28, 2010.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[20] R. Doc. No. 51.