UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EARL DEVILLE, ET AL.                          CIVIL ACTION

VERSUS                                        NO: 09-7391

CONMACO/RECTOR, L.P., ET AL.                  SECTION: "S"

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In 2009, Great Southern Dredging, Inc., contracted with the State of Louisiana to repair and/or install certain docks, bulkheads, and other structures at the State's Turtle Cove Research Facility located near Manchac, Louisiana. In connection with the project, Great Southern chartered a number of vessels, including eleven barges. Great Southern also leased a "crawler crane" and certain hammers and pile driving equipment from Conmaco/Rector L.P. The crane was eventually driven onto the barges chartered by Great Southern and was used for pile driving activity.

On August 13, 2009, plaintiff, Earl Deville, who was employed by Great Southern as a longshoreman, was severely injured when a pneumatic pile driving hammer attached to a Conmaco crane fell and crushed his left arm. Earl Deville, and his wife Donna, filed this suit against Conmaco, Great Southern, and their insurers seeking damages for his injuries. Conmaco filed a third party complaint against Great Southern's insurer, Fireman's Fund Insurance Company, alleging that it was an additional insured under the policy, and that the policy provided coverage for the August 13, 2009, accident.

On September 28, 2010, the court, ruling on Fireman's Fund's motion for summary judgment, held that Great Southern's lease with Conmaco for the crane was an "insured contract" as defined in the Fireman's Fund policy, and that Conmaco is an "Additional Insured" under the policy. The court also held that the watercraft exclusion in the Fireman's Fund policy is ambiguous. As a result, the court interpreted the policy in favor of coverage, finding that the watercraft exclusion does not apply to Conmaco because the exclusion uses the word "you" which is defined in the policy to mean the Named Insured, which is Great Southern.

The trial of this matter was scheduled to commence on March 28, 2011. The Deville's settled their claims with the defendants before trial for $1,500,000. On March 28, 2011, Lexington and Fireman's Fund argued their respective positions with respect to the ranking of the applicable insurance policies. They seek a determination of which policies are primary, which are excess, and how the settlement with plaintiffs is covered by each policy. The Fireman's Fund policy has a $1,000,000, limit of liability, and the general liability policy issued to Conmaco by Lexington also has a $1,000,000, limit of liability. The excess insurance policy issued to Great Southern by XL Specialty Insurance Company has a $4,000,000, limit of liability.

Lexington argues that the Fireman's Fund policy is primary, and covers the first $1,000,000, of the settlement with plaintiffs. Lexington also argues that its general liability policy and XL policy are excess to the Fireman's Fund policy, but share liability for amounts over $1,000,000, of the settlement with plaintiffs in ratio of 4:1, with XL paying $400,000, and Lexington paying $100,000, based on the policies' respective limits of liability, and the excess insurance policy issued to Conmaco by Lexington has a $2,000,000, limit of liability.

Fireman's Fund argues that the Lexington general liability policy is primary, and that its policy is excess over the Lexington general liability policy.[1] Fireman's Fund also argues that its policy and the Lexington excess policy share liability in a ratio proportionate to their limits of liability for any amounts over the $1,000,000, limit of liability of the Lexington general liability policy.

## ANALYSIS

A.  **Insurance Policy Interpretation**

The interpretation of an insurance contract is a question of law. See Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 197 F.3d 742, 746 (5th Cir. 2000). Under Louisiana law, the general rules of contract interpretation apply to determine the common intent of the parties to the contract. See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La.1994). The intent of the parties as reflected in the policy determines the extent of the coverage. Id. The words of an insurance policy are given their "general, ordinary, plain, and proper meaning ... unless [they] have acquired a technical meaning." Id.

When the language is clear and unambiguous, it must be enforced as written. See Reynolds v. Select Props. Ltd., 634 So.2d 1180, 1183 (La.1994). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc., 180 F.3d 664, 668-69 (5th Cir.

---

[1] Fireman's Fund contests the court's September 28, 2010, ruling which found that Conmaco had coverage under its policy, and reserved its rights to appeal the issues addressed in that Order.

1999) (quoting Tx. E. Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted). If there is an ambiguity in the policy of insurance, the ambiguous provision is construed against the insurer because it is the party who furnished the text. LA. CIV.CODE ANN. art. 2056.

When more than one insurer covers the same risk, the court must determine how the coverages coordinate to pay for the loss. See Graves v. Traders & Gen. Ins. Co., 214 So.2d 116, 117 (La. 1968). Under Louisiana law, the court must determine the priority of the coverages by interpreting the policies' "other insurance" clauses. See id.; Truehart v. Blandon, 884 F.2d 223, 226 n. 7 (5th Cir. 1989). "[W]hen two [insurance] policies afford the same layer of coverage and both contain conflicting 'other insurance' clauses which are irreconcilable, the policies must share liability on a pro rata basis." Samuels v. State Farm Mut. Auto. Ins. Co., 939 So.2d 1235, 1241 (La. 2006) (citing Graves, 214 So.2d 116). However, if the "policies simply provide different layers of coverage," the policies are not mutually repugnant, and are ranked according to their "other insurance" provisions. Id.

**B. The Fireman's Fund Policy is Primary and the Lexington General Liability Policy is Excess**

The Fireman's Fund policy's "other insurance" provision provides:

Other Insurance or Protection

    a.    This policy is excess over any other insurance under which the insured has been afforded insured status, whether primary, excess (other than insurance effected by the Named Insured hereunder and specifically written as excess of this coverage), contingent or on any other basis, whether prior or subsequent hereto, and by whomever effected directly or indirectly covering loss or damage insured hereunder, and this company

4

>   shall be liable only for the excess of such loss or damage beyond the amount due from such other insurance up to, but not exceeding, the limits of this policy as set forth in the declarations.
>
>   \* \* \*
>
>   c.   Nothwithstanding paragraphs a. and b. above, this insurance shall be primary to any other insurance, but only:
>
>   (1)   With respect to "your work", and
>
>   (2)   When required by and only to the extent of such obligation under an "insured contract".

The court has already determined that "you" refers only to Great Southern. The policy defines "your work" as:

>   a.   Work or operations performed by you or on your behalf, and
>
>   b.   Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

>   a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
>   b.   The providing of or failure to provide warnings or instructions.

Lexington argues that the plaintiffs' claims fall under the exception to the excess insurance provision. Lexington argues that the claims fit the definition of "your work" because the crane was "equipment furnished in connection with" Great Southern's work or operations. Therefore, Lexington contends that the Fireman's Fund policy is primary.

Fireman's Fund argues that its policy is excess over the Lexington general liability policy. Fireman's Fund argues that because the court has already determine that "you" and "your" refer only to Great Southern, "your work" can only refer to Great Southern, and that this exception to the excess status can only apply to Great Southern.

The "other insurance" provision in the Lexington general liability policy provides:

> Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Policy, our obligations are limited as follows:
>
> a.  Primary Insurance
>
> > This insurance is primary except when b. Excess Insurance, below, applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. Method of Sharing, below.
>
> b.  Excess Insurance
>
> > This insurance is excess over:
>
> > \* \* \*
>
> > (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations or the "products-completed operations hazard" for which you have been added as an additional insured by attachment of an endorsement.

Lexington argues that subsection "b. Excess Insurance" quoted above applies, because it was added as an additional insured by an endorsement to the Fireman's Fund policy, and the liability arose out of its operation of renting the crane to Great Southern. Thus, Lexington argues that the

Lexington general liability policy and the Fireman's Fund policy are not mutually repugnant, and that it is excess over the Fireman's Fund policy.

Fireman's Fund argues that the term "operations" is ambiguous because it is not defined in the Lexington general liability policy. Therefore, the Fireman's Fund argues that it is unclear whether the excess provision in the Lexington general liability policy applies, which means that the Lexington policy is primary.

The exception to the Fireman's Fund policy's status as an excess policy applies with respect to Great Southern's work when the insurance is required under an "insured contract," to the extent of the contractual obligation to provide insurance. The court has held that Great Southern's lease with Conmaco for the crane is an "insured contract" under the Fireman's Fund policy. The lease required Great Southern, at its sole cost and expense, to name Conmaco as an additional insured under insurance policies to:

> PROVIDE AND MAINTAIN A POLICY OF COMMERCIAL GENERAL LIABILITY INSURANCE COVERING ALL RISKS OF PHYSICAL LOSS OR DAMAGE TO PROPERTY OR INJURY TO PERSONS WITH RESPECT TO (GREAT SOUTHERN'S) POSSESSION AND USE OF THE EQUIPMENT, in such amounts as may from time to time be satisfactory to (Conmaco), including, but not limited to, coverage for contractual liability with regard to all of the obligations and indemnities of (Great Southern) hereunder . . .

To comply with that obligation, Great Southern obtained an endorsement to the Fireman's Fund policy which provides: "Section IV. of the Policy (Who is an Insured) is amended to include any person or organization that you are obligated by an 'insured contract to include as Additional Insured, but only with respect to liability arising out of 'your work'."

The liability at issue in this suit arose when the crane that Great Southern leased from Conmaco pursuant to an insured contract injured Deville. The crane was equipment furnished in connection with Great Southern's work, or operations. Therefore, the conditions of the excess status exception in the Fireman's Fund policy are satisfied, and that policy is primary. Also, the conditions in the Lexington general liability policy's excess provision are satisfied, and it is excess over the Fireman's Fund policy.

### C.   The XL Policy

The XL policy was issued to Great Southern as excess insurance over the Fireman's Fund policy, and other insurance policies. It has a $4,000,000, limit of liability, and provides coverage to the "Insured" for personal injury with respect to the operations of "Dredging – Pile Driving." The XL policy defines "Insured" as Great Southern, and any person or organization to whom Great Southern "is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by the Policy, but only in respect of operations by or on behalf of" Great Southern. Pursuant to its lease with Conmaco for the crane, Great Southern was required to provide insurance to Conmaco. Therefore, Conmaco is an insured, and the XL policy provides coverage for the liability at issue.

The "Other Insurance" provision of the XL policy provides:

> If other valid and collectible insurance is available to the Insured covering a loss also covered by this Policy, other than insurance that is written to be specifically in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise. Nothing herein shall be construed to make this Policy subject to conditions and limitations of other insurance.

The Lexington general liability policy is excess over the Fireman's Fund policy. The Lexington general liability provides that when it is excess over other insurance,

> b. Excess Insurance
>
> \* \* \*
>
> we will pay only share of the amount of the loss, if any, that exceeds the sum of:
>
> (1) The total amount that all such other insurance could pay for the loss in the absence of this insurance; and
>
> (2) The total of all deductible and self-insured amounts under all that other insurance.
>
> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.
>
> c. Method of Sharing
>
> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes an equal amount until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable lit of insurance to the total applicable limits of insurance of all insurers.

The XL policy issued to Great Southern was not purchased specifically to apply in excess of the limits of liability of the Lexington general liability policy. Therefore, the Lexington policy provides that it will share liability with XL by the Method of Sharing found in subpart (c). However, the XL policy purports to be excess over all other insurance. Therefore, the "other insurance"

clauses in the Lexington general liability policy and the XL policy are "mutually repugnant." The XL policy does not provide for sharing on an equal basis. Therefore, XL and Lexington share liability for the settlement amounts over $1,000,000, pro rata pursuant to their limits of liability in a ratio of 4:1, with XL liable for $400,000, and Lexington liable for $100,000.

## CONCLUSION

Fireman's Fund is liable for the first $1,000,000, of the settlement amount, followed by XL and the Lexington general liability policy sharing amounts over $1,000,000 in a ratio of 4:1, with XL liable for $400,000, and Lexington liable for $100,000.,

New Orleans, Louisiana, this 15 day of April, 2011.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE